637 A.2d 753

Edward L. BENNETT, Petitioner,

v.

STATE CORRECTIONAL INSTITUTE
AT MUNCY, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1993.

Decided Feb. 2, 1994.

John D. Killian, for petitioner.

Robin M. Lewis, Asst. Counsel, for respondent.

Before DOYLE and SMITH, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Edward L. Bennett, a corrections officer, petitions for review of the April 30, 1993 decision of the State Civil Service Commission (Commission), sustaining the action of the State Correctional Institution at Muncy (Appointing Authority) in demoting Bennett for the unsatisfactory performance of his duties under Section 706 of the Civil Service Act (Act).[1] We affirm.

Section 706 of the Act provides:

---

1. Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.706.

An appointing authority may demote to a vacant position in a lower class any employe in the classified service who does not satisfactorily perform the duties of the position to which he was appointed or promoted and who is able to perform the duties of the lower class.... No employe shall be demoted because of his race, religion or political, partisan or labor union affiliation.

71 P.S. § 741.706. When an employee challenges his demotion under the Act, the burden lies with the appointing authority to show that the employee did not satisfactorily perform the duties of the position to which he was appointed or promoted. 71 P.S. §§ 741.706 and 741.951; 4 Pa.Code § 105.-15.

■ The issue before us is whether the Commission erred in determining that the Appointing Authority had met its burden of showing that Bennett did not satisfactorily perform his duties.[2]

## BACKGROUND

Following a pre-disciplinary conference, the Appointing Authority, by letter of August 23, 1991, advised Bennett of his demotion from Corrections Officer IV, regular status, to Corrections Officer I, regular status, for insolence and disrespect of his superiors; misuse of official authority; and negligent discharge of his duties. (R.R. at 2a.)

Bennett appealed his demotion to the Commission on the grounds that the Appointing Authority lacked just cause for his demotion. At a pre-disciplinary conference on August 8, 1991, the Commission found that the following three incidents justify his demotion.

On May 8, 1991, contrary to the instructions of the Special Investigation Office, Bennett issued a misconduct report to an inmate, scheduled to be paroled on May 12, 1991, for the

2. Our scope of review of a decision by the Commission is limited to determining whether there has been a violation of constitutional rights or an error of law or whether the findings of fact are supported by substantial evidence. *Behm v. State Civil Service Commission,* 90 Pa.Commonwealth Ct. 207, 494 A.2d 1166 (1985).

inmate's allegedly false accusation that Bennett had assaulted her on February 1, 1991. The Commission determined that Bennett's issuance of the misconduct report represented a malicious, vindictive misuse of authority for the purpose of delaying the inmate's release on parole.

In mid September, 1990, Bennett conducted a deficient investigation of allegations that an Officer was paying for sexual relations with an inmate. Bennett interviewed only one of several people with possible knowledge of the illicit relationship. Further Bennett failed to maintain adequate documentation of his investigation. The Commission determined that Bennett's inadequate investigation constituted negligent discharge of his duties.

In response to a May 24, 1991 memorandum of the Pennsylvania Commissioner of Corrections describing the status of salary discussions with the commissioned officers, Bennett issued a June 25, 1991 memorandum describing the Commissioner's memorandum as "not entirely truthful" and the presentation of the Commissioner's offer as "hideous and unacceptable." The Commission determined that Bennett's June 25, 1991 memorandum violated Section B–11 of the Department of Corrections Code of Ethics, which requires employees to treat their supervisors with respect.

Bennett appeals, arguing that the Commission's findings are not supported by the evidence. Additionally, Bennett argues that his June 25, 1991 memorandum relating to labor negotiations is speech protected by the First Amendment and Section 706 of the Act.

## DISCUSSION

Our examination of the record reveals that substantial evidence supports the Commission's findings. We conclude, particularly in view of Bennett's flagrant misuse of power by improperly attempting to delay an inmate's release on parole, that the Commission acted within its discretion in demoting Bennett.

With respect to the misconduct report issued by Bennett to the inmate, the Appointing Authority presented the following evidence, which was found credible by the Commission. On February 2, 1991, the inmate, Lisa Cooper, accused Bennett of assaulting her at the conclusion of an interview which he conducted in her cell on February 1, 1991. The Special Investigator evaluating Cooper's complaint, Barry Williams, informed Bennett that if the investigation revealed that Cooper had lied, a misconduct report could be issued to her. In the first week of May, 1991, C.E. Emerick, Chief Investigator, informed Bennett that the Special Investigations Office had submitted its report to the Commissioner for further action. Emerick expressly instructed Bennett not to issue a misconduct report at that time. Acting Director, David Horwitz, confirmed that Bennett was instructed not to issue a misconduct report.

Nonetheless, on May 8, 1991, four days before Cooper's scheduled parole date, Bennett issued a misconduct report accusing Cooper of falsely reporting that Bennett had assaulted her. According to Mary Brouse, a parole representative, Bennett stated that although the inmate had, by that time, received her release orders, the inmate would not be paroled because of his misconduct report.

Nothing in the record supports Bennett's contention that the Appointing Authority had completed its investigation before Bennett issued the misconduct report. To the contrary, we conclude that the evidence presented by the Appointing Authority, accepted by the Commission as credible, amply supports the Commission's findings that Bennett issued the May 8, 1991 misconduct report prematurely and against his superiors' instructions, for the purpose of delaying Cooper's parole. Therefore, we reject Bennett's contention that the evidence does not support the inference that he issued the report for vindictive purposes.

The record evidence also supports the Commission's findings with respect to Bennett's unsatisfactory investigation of allegations that an officer was paying for sexual relations with an inmate. Barbara Wilhelm, Special Investigator of the

Office of Inspector General, who reviewed Bennett's investigation of the matter, testified at length as to the deficiencies in Bennett's performance. Specifically, Wilhelm stated that Bennett failed to interview certain persons identified as possible sources of information. Further, Wilhelm testified that Bennett failed to properly document the interviews which he purportedly did conduct. Wilhelm also stated that Bennett had provided important documents to other authorities without retaining copies in his file.

In response, Bennett argues that he did not fail to use reasonable investigatory procedures because he was instructed only to "check out the rumors," not to conduct a formal investigation of the matter. We find Bennett's assertion unsupported by the record. Bennett's own monthly report of October, 1990 indicates that the investigation was assigned to him on September 10, 1990. (R.R. at 419a.) As Intelligence Captain, Bennett was required to follow reasonable procedures in investigating the matter. We agree with the Commission that the evidence clearly shows that Bennett's investigation was grossly deficient.

We also conclude that the Commission did not err in determining that statements contained in Bennett's June 25, 1991 memorandum violated the Department of Corrections Code of Ethics. The Code of Ethics provides:

> Employes are expected to treat their peers, supervisors and the general public with respect and conduct themselves properly and professionally at all times: unacceptable conduct or insolence will not be tolerated.... Any employe who violates the provisions of this code shall be subject to immediate disciplinary action by the appointing authority.

(R.R. at 403a, 409a.) Bennett's memorandum issued to the commissioned officers, describes the Commissioner's earlier memorandum as "not entirely truthful" and that the Commissioner's presentation of a particular offer was "hideous and unacceptable." (R.R. at 410a.)

Bennett argues that his statements have been misinterpreted; that the Commissioner, himself, is not the subject of his

criticism. However, where the reasonable inference to be drawn from Bennett's statements is that the Commissioner intended to lie or deceive the commissioned officers, we agree that the tone of Bennett's memorandum showed a lack of respect for his superior, in violation of the Code of Ethics.

■ Bennett also argues that his statements, concerning labor relations, are protected by the First Amendment and Section 706 of the Act. We disagree. First, the record shows that the quoted statements, which contributed to Bennett's demotion, concerned his personal opinion as to the trustworthiness of the Commissioner, not labor relations. We find those statements, analogous to the statements by an Assistant District Attorney in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), questioning the confidence and trust that co-workers have in various supervisors, which the Supreme Court determined do not involve a matter of public concern. Therefore, because we believe that Bennett's statements, assailing the Commissioner's character for honesty, do not involve a matter of public concern, we hold that the First Amendment does not prevent his demotion.

■ Second, there is no evidence that Bennett was demoted for any of the unlawful purposes enumerated in Section 706. Without deciding whether the commissioned officers association falls within the definition of a partisan or labor union under Section 706, the record shows that it was Bennett's insolence towards the Commissioner in violation of the Code of Ethics, not his affiliation with the commissioned officers association, that contributed to his demotion.

Because we believe that the Commission did not err in concluding that Bennett's actions impugn the integrity of the prison system, we affirm the order of the Commission.

### *ORDER*

**AND NOW,** this 2nd day of February, 1994, the order of the State Civil Service Commission dated April 30, 1993, Appeal No. 13908 is hereby affirmed.